CASE 75—IN THE MATTER OF THE SALE OF CERTAIN REAL ESTATE BY THE ADMR. OF W. A. MOORE, SR., TO W. E. SLEET, MABEL C. MOORE, INTERVENED, CLAIMING SAID ESTATE.—JUNE 4.

# Moore's Admr. v. Sleet, &c.

APPEAL FROM WOODFORD CIRCUIT COURT.

JUDGMENT FOR MABEL C. MOORE AND THE ADMR. APPEALS. AFFIRMED.

CONSTRUCTION OF WILL—VESTING OF ESTATES FAVORED—VESTED REMAINDER—THE WORD "OR" CONSTRUED AS "AND."

Held: 1. The law favors the vesting of estates, and unless the intention of the testator as shown in his will, fairly construed, requires it, an estate once given will not be defeated by subsequent provisions of the same instrument.

2. The present capacity to take effect in possession, if the possession were to become vacant before the estate limited in remainder determines, universally distinguishes a vested from a contingent remainder.

3. In the construction of a will the word "or" will be construed as "and," where it is necessary to do so in order to effectuate the manifest intention of the testator.

4. Where a testator devised land to his wife for life, remainder to his nephew, providing that if the nephew should die "before he comes into possession of same, or before he arrives at twenty-one years of age," then the land to be sold at the death of testator's wife, and the proceeds divided among certain other persons, the nephew took a vested interest in remainder, subject to be defeated by his death before he arrived at twenty-one years of age and before he came into possession of the land; and his estate, having become absolute, upon his arrival at twenty-one years of age, was not defeated by his subsequent death before he came into possession.

LAFFERTY & KING, D. L. THORNTON AND HAZELRIGG & CHENAULT, FOR APPELLANT. ·   ·

The only question in this case, comes up, upon the construction of the will of Wm. A. Moore, deceased, which was probated in 1884. ·

We here recite all that part of the will to be construed by the court which is as follows:

"To my faithful and beloved wife, Mary J. Moore, I give fifty acres of the farm on which we now reside, to include the dwelling and all the improvements, during her natural life . . . All the property hereby willed to my wife is given to her absolutely, to do with as she pleases during her life, or by will at her death, but be free from control or debt of any future husband, except the fifty acres, including the dwelling and improvements, which, at her death, shall go to my nephew and namesake, William A. Moore, the son of my late niece, Jane A. Pollock and John I. Moore, if my wife should die before William A. Moore arrives at twenty-one years of age, then I desire that his father, John I. Moore shall act as his guardian and manage the same to the best interests of his son, William A. Moore. And in regard to the reversionary interest in the fifty acres of my home place willed to Wm. A. Moore, the son of Jane A. Pollock, if Willie should die before he comes into the possession of the same, or before he arrives at twenty-one years of age, then I desire that the same be sold at the death of my wife, if Willie should then be dead, and one half of the proceeds be equally divided between his two · sisters, Mary and America, and the other half be divided into four equal parts and distributed, each part pro rata, among the then living children, or their descendants, of my sister, E. B. Hall and my three brothers, John P. James Mc., and S. M. Moore, it is my great desire that my nephew, Willie A. Moore, shall receive a liberal collegiate education and live up to habits of industry, and hope his father will furnish him the opportunity and means to accomplish this much desired object. But if his father and guardian is not able or willing to do this he may encumber the reversionary interest in· the fifty acres of land that he will come into possession of at my wife's death, to accomplish it. But most of all, I· desire he shall have and cultivate a high moral and religious character. In addition to the reversionary interest in the fifty acres, I will him, W. A. Moore, $1,000 to be used by his guardian for his education."

The devisee, Wm. A. Moore, died several years prior to the death of the widow of the testator, and about two months

after he arrived at the age of twenty-one years, and left surviving him, one child, an infant, Mabel C. Moore, who is in this case on intervening petition claiming to be entitled to the fifty acres of land referred to in the will.

The widow of the testator died in November, 1901, and in January, 1892, W. T. Lafferty qualified as administrator with the will annexed of the estate of William A. Moore, and proceeded under the provisions of the will, and sold said fifty acres to W. E. Sleet for the purpose of making distribution of the proceeds as directed in the will.

Our contention is, that Willie, having died before coming into possession of the land, and before the death of the widow, and not coming into the possession before arriving at twenty-one years of age, nothing would pass to his heirs under the will.

### AUTHORITIES CITED.

Parrish, &c. v. Vaughn, &c., 12 Bush, 87; Thackston v. Watson, 8 R., 193; Clarkson, &c v. Clarkson, &c, 8 Bush, 655; Duncan v. Kennedy, 9 Bush, 580; Forsythe v. Lansing's Exr., 22 R., 1064; Kent's Com., vol. 4, sec. 202; Minor's Institutes, (vol. 2) 388.

J. M. HOGE and HANSON PETERSON, for appellee, Mabel C. Moore.

1. It is an old and well established principle of law which gives place only to the clearly expressed intention of the testator: That no provision can avail to take away or cut down an estate previously given in the same will, unless the words which cut it down, are as clear and unmistakable as the words giving the estate; and mere precatory words are not, and can never be, so clear, as the positive expression of what the estate willed is.

2. The courts universally hold estates to be vested rather than contingent, for the reason that it is the policy of the law for the good of society, to fix definitely the fee in land, and settle titles thereto.

3. The use of the disjunctive "or" instead of the copulative "and," makes contingencies alterative. "Or" means "either" but not "both," and the courts have uniformly recognized this, and when the instrument clearly shows that the grantor or testator evidently meant both, "and" will be substituted for "or." The basis of the rule being, as stated, that the testator so intended to write it.

4. No rule of interpretation should be adopted by the court

which would disinherit the infant heir, unless such a construction is inevitable from the express language of the will.

5. Not only must Willie A. Moore have died without coming into possession, but he must have died before arriving at twenty-one years of age before appellee, Mabel C. Moore, can lose her birthright in the fifty acres of land.

6. The intention of the testator is the pole star in the will, and to ascertain that intention, is the object of rules of construction, and this intention must be ascertained by giving effect to every word, sentence, clause and item, by bringing them together and making them consistent, and by taking a view of the objects of his bounty and looking into the future as he saw it.

## AUTHORITIES CITED.

Bells v. Bells, 8 L. R. A., 696; Jackson v. Bull, 10 Johns., 20; Mitchell v. Morse, 77 Me., 423; Harps v. Knop, 21 Pick., 412; Foose v. Whitmore, 82 N. Y., 405; Siebert v. Wise, 70 Pa., 147; Moore v. Sanders, 15 S. C., 440; Anderson v. Cary, 36 Ohio St., 506; Ency. Law, 1st ed., 369 and notes; 467 and notes, Jarman on Wills, 5 ed., 827, St. Seq., Jarman on Wills, vol. 1, 644 and note, vol. 2, 80 et seq.; Ency. Law, vol. 29, 1st ed, 375 and notes, 376 and 377 and notes, 450 and notes; Jackson v. Blanshaw, 5 Am. Dec., 188; Jackson v. Merrell, 5 Am. Dec., 213; Bedford v. Bedford's Admr., 18 R., 193, 22 R., 773; Bostick v. Lawton, 1 Spear, S. C., 258; Armington v. Alton, 2 Murphy, 321; Brown v. Mugway, 15 N. J. L., 330; Weddel v. Mundy, 6 Ves., 31; Jarman, vol. 3, 5th ed., 703; Ency. Law, vol. 17, 218 and note; Bentley v. Meech, 25 Beavans, 197; Danforth v. Talbott's Admr., 7 B. M.; Gregsby v. Breckinridge, 12 B. M., 629; Parrish v. Vaughn, 12 Bush, 97; Phelps v. Bates, 54 Con., 11; Darnell v. Crain, 1 R., 354; Taylor v. Meder, 22 R., 772.

OPINION OF THE COURT BY JUDGE BURNAM—REVERSING.

By the terms of the will of W. A. Moore, which was probated in the Woodford county court in the year 1884, a large estate was devised to his wife, surviving brothers and sisters, and the children of those who had died. Among other bequests, he gave to his wife, Mary J. Moore, 50 acres of land, on which the dwelling house in which he resided was located, with remainder to his nephew and name-

sake, W. A. Moore, Jr., upon certain conditions; and up-
on this appeal we are asked to construe these sections of
the will of decedent which dispose of this 50 acres of land,
and which are as follows:

"To my faithful and beloved wife, Mary J. Moore, I give
fifty acres of the farm on which we now reside, to include
the dwelling and improvements, during her natural life.
. . . All the property hereby willed to my wife is giv-
en to her absolutely, to do with as she pleases, during her
natural life, or by will at her death, but to 'be free from
the control and debts of any future husband, except the
fifty acres, including improvements, which at her death
shall go to my nephew and namesake, William A. Moore,
the son of my late niece Jane A. Pollock and John I.
Moore. If my wife should die, before said William A.
Moore arrives at twenty-one years of age, then I desire
that his father, John I. Moore, shall act as his guardian,
and manage the same to the best interest of his son Will-
iam. . . .

"To Mary and America, daughters of my niece Jane
Moore, I give each one thousand dollars, to be held
and managed by their father, J. I. Moore, as their guard-
ian, who shall let the interest on the same accumulate,
and be applied in giving them a good education; and in re-
gard to the reversionary interest in the fifty acres of my
home place, willed to William A. Moore, the son
of Jane A. Moore; if Willie should die before he
comes into possession of same, or before he ar-
rives at twenty-one years of age, then I desire that the
same be sold at the death of my wife, if Willie should then
be dead, and one half of the proceeds be divided equally
between his two sisters, Mary and America, and the other
half shall be divided into four equal parts, and distributed

each part pro rata among the then living children, or their descendants, of my sister, E. B. Hall, and my three brothers, Jno. P., James Mc., and S. M. Moore. . . .

"It is my great desire that my nephew Willie A. Moore shall receive a liberal collegiate education, and be brought up to habits of industry, and I hope his father will furnish him the opportunity and means to accomplish this much-desired object. But if his father and guardian is not able and willing to do this, he may incumber the reversionary interest in the fifty acres of land he will come into possession of at my wife's death, to accomplish it. But most of all, I desire that he shall cultivate high moral and religious character. In addition to the reversionary interest in the fifty acres, I will him, W. A. Moore, one thousand dollars, to be used by his guardian in his education."

W. A. Moore, Jr., died in January, 1894, after he had attained the age of 21 years, and left surviving him, as his only child and heir at law, the infant appellee, Mabel Clair Moore, the issue of his marriage to Willie Pugh Miller. The widow of the testator, Mary J. Moore, died in November, 1901, and in January, 1902, the appellant, W. T. Lafferty, qualified as administrator *de bonis non*, with the will annexed, of the estate of William A. Moore, Sr., and as such sold the 50 acres of land and improvements to one W. E. Sleet for the sum of $8,800, one-third of which was to be paid in cash, and balance in two equal payments, due, respectively, in one and two years from the date of sale, with interest at 6 per cent. per annum from date. The purchaser, Sleet, refused to comply with his contract of purchase upon the ground that appellant had no authority to make the sale, and this action was brought for the purpose of enforcing that contract. The appellee, Mabel Clair Moore, by her statutory guardian, intervened, and by cross petition sought

to have the above section of the will of W. A. Moore, Sr.,
construed, and asked that the possession of the property
be adjudged to her, and that both Lafferty and Sleet be
enjoined from interfering with her title or possession
thereto. The judgment of the trial court was that the
title and right of possession was in the infant and the ad-
ministrator *de bonis non* has appealed.

In the first section of the will, which refers to the land
in controversy, the 50, acres of land is devised by the tes-
tator to his wife for life, and at her death to his nephew
and namesake, W. A. Moore. He adds, "If my wife should
die before said William A. Moore arrives at twenty-one
years of age, then I desire that his father, John I. Moore,
shall act as his guardian, and manage the farm to the best
interest of his son William." In another clause of the will,
the testator, in speaking of the 50 acres of land, says, "In
regard to the reversionary interest in the fifty acres of my
home place, willed to W. A. Moore, the son of Jane A.
Moore, if William should die before he comes into posses-
sion of same, or before he arrives at twenty-one years of
age, then I desire that the same be sold at the death of my
wife, if William should then be dead." In the first sec-
tion, the testator provided that, if his wife died during
the minority of William, the land should be held by his fa-
ther as his testamentary guardian until his majority. In
the second clause he provides for the contingency of Will-
iam's dying during his minority, and in that event, whether
it occurred before or after the death of his wife, he direct-
ed that the land should be sold by his executor at the death
of his wife.

The law favors the vesting of estate, and unless the in-
tention of the testator, as shown in his will, fairly con-
strued, requires it, an estate once given will not be de-

feated by subsequent provisions of the same instrument. In this case the fee in remainder is clearly given by the words, "It shall go to my nephew and namesake," and the only words which can be construed to take it away are the words, "I desire that in certain contingencies it shall be sold." Mr. Minor, in his Institutes (volume 2, p. 388), in distinguishing a vested from a contingent remainder, says: "It is not the uncertainty of ever taking effect in possession that makes a remainder contingent, for to this extent every remainder is and must be liable, since the remainder-man may die without heirs before the distribution of the particular estate. The present capacity to take effect in possession, if the possession were to become vacant before the estate limited in remainder determines, universally distinguishes a vested from a contingent remainder." And this distinction has been frequently recognized by this court. See Railey v. Milam, 9 R., 410, 5 S. W., 367; Forsythe v. Lansing's Exr's, 109 Ky., 518, 22 R., 1060, 59 S. W., 854. If we give a fair and reasonable construction to the language employed by testator in all the clauses of his will in which he refers to this 50 acres of land, we think it was his intention that his nephew, W. A. Moore, Jr., should take a vested interest in remainder therein, subject to being defeated by his death before he arrived at 21 years of age, and before he came into possession of the land. Courts, in the construction of wills, have long exercised the right to give to disjunctive words a conjunctive meaning in cases in which it is necessary to do so in order to effectuate the manifest intention of the testator. See 2 Rop. Leg., p. 290; Hawk. Wills, 203; 1 Redf., Wills, p. 455; Darnell v. Crain's Guardian, 1 Ky. Law Rep., 354; Taylor v. Meder (22 R., 772) (58 S. W., 801); Bentley v. Meech, 25 Beav., 197. In the latter case the language of the will and the facts were almost

identical with those in the case at bar, and the learned chancellor said: "I think this is a case where 'or' should be turned into 'and,' and that it was the intention of testator that the gift to the brother should only take effect in the event of his son's dying in the life of the widow, under age."

We think the interpretation given by the circuit judge to the clauses of the will of testator conforms to the established rules of construction, and the judgment is therefore affirmed.